UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANTHONY BAKSH,

    -against-

CITY OF NEW YORK et al.

        Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CV-7065 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

  Plaintiff Anthony Baksh claims that officers of the New York City Police Department ("NYPD") pulled him over without reasonable suspicion or probable cause, wrongfully arrested and searched him after he was unable to produce his driver's license, used excessive force against him, and made false statements about the incident to prosecutors. (Am. Compl. (Dkt. 10).) He brings this action under 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights, and New York tort law. The City of New York (the "City") and the officers involved in the incident—Sergeant Christopher Fusaro and Police Officers Jasmin Nikocevic, Michael Yapp, John Czech, and Jonathan Leon (collectively, the "Officer Defendants")—move for summary judgment on all claims. (Defs. Mem. in Supp. of Mot. for Summ. J. ("Defs. Mem.") (Dkt. 24).) For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

### A.  Factual Background

  The following statement of facts is largely taken from the parties' Local Rule 56.1 statements and deposition testimony, with the evidence "constru[ed] . . . in the light most favorable to the non-moving party." Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir.

2018) (internal quotation marks and citation omitted).  (See Defs. Statement of Material Facts ("Defs. 56.1") (Dkt. 26); Pl. Counterstatement of Material Facts ("Pl. 56.1") (Dkt. 29); Defs. Resp. to Pl. Counterstatement of Material Facts (Dkt. 32).)

Around midday on August 15, 2015, Plaintiff was pulling into the parking lot of a supermarket in South Brooklyn when he was stopped by Police Officers Jasmin Nikocevic and Michael Yapp.  (Pl. 56.1 ¶¶ 1-4; Pl. Dep. Tr. (Dkt. 30-1) 21:7-22.)  The parties dispute why the officers stopped Plaintiff:  Nikocevic and Yapp testified that they pulled Plaintiff over because he was driving without his seatbelt (Defs. 56.1 ¶¶ 2-4), but Plaintiff avers that he was wearing his seatbelt at the time (Pl. 56.1 2-4; Pl. Dep. Tr. 27:21-24, 29:25-30:3).[1]  After Plaintiff backed out of the parking lot and pulled over to the side of the road, Nikocevic and Yapp approached his car.  (Defs. 56.1 ¶ 5.)  Plaintiff rolled his window about a third of the way down (Pl. 56.1 ¶ 6), and Nikocevic told him that he was being stopped for driving without a seatbelt and asked for his license, registration, and proof of insurance (Defs. 56.1 ¶¶ 7-8).

The parties dispute whether Plaintiff then produced his registration and insurance information.  (Pl. 56.1 ¶ 11.  Compare Pl. Dep. Tr. 27:25-28:07, with Nikocevic Dep. Tr. (Dkt. 30-5) 22:2-25.)  It is undisputed, however, that Plaintiff did not produce his driver's license.  (Pl. 56.1 ¶ 9.)  Although Plaintiff was a licensed driver, he did not have his license on his person at the time of the stop.  (Id.)  Plaintiff did, however, have a photograph of his license stored on his phone, and he asked or allowed Nikocevic to inspect the photograph.  (Id.; see also Pl. Dep. Tr. 28.2-7; Nikocevic Dep. Tr. 23:6-16.)  Nikocevic observed that the photographed license matched Plaintiff's face and asked him to copy the information from his license onto a

[1] Plaintiff testified only that, once he was stopped, he told officers that "you can see clearly my seat belt is on." (Pl. Dep. Tr. 27:23-24.)  He did not actually testify that he was wearing his seatbelt at the time Nikocevic and Yapp first spotted him.  Nevertheless, on a motion for summary judgment, the court draws the reasonable inference that Plaintiff was wearing his seatbelt at the time Nikocevic and Yapp told him to pull over.

piece of paper.  (Pl. Dep. Tr. ¶ 12.)  Plaintiff asked Nikocevic for a pen with which to write down the information, but Nikocevic refused to give him one and told him that he should find one in his car.  (Id.; Pl. Dep. Tr. 29:14-21.)  As Nikocevic later testified, he would never give anyone a pen, because "[p]ens can be used as a weapon."  (Nikocevic Dep. Tr. 25:9-18.)

Plaintiff testified that, after he asked Nikocevic for a pen, Nikocevic's "attitude changed completely as if it was night and day," causing Plaintiff to "fear[] for [his] life" and dial 911, which in turn caused Nikocevic and Yapp to call for backup.  (Pl. 56.1 ¶¶ 14-15; Pl. Dep. Tr. 29:20-21, 30:3-4.)  At this point, the parties' accounts of the incident diverge sharply.  According to Defendants, Plaintiff rolled up his window and failed to comply with multiple instructions that he step out of the car.  (Defs. 56.1 ¶ 13; Nikocevic Dep. Tr. 35:18-36:11.)  Plaintiff testified, however, that he never rolled up his window or refused to comply with any of the officers' requests.  (Pl. 56.1 ¶ 13.)  According to Plaintiff, Nikocevic put his hand on his baton, threatened that "we can do this the easy way and the hard way and I am going to break the f---ing window." (Pl. Dep. Tr. 30:17-20.)  Plaintiff testified that he told the 911 operator that Nikocevic was "trying to break [his] window because [Plaintiff was] not writing down the information that [Nikocevic was] asking [him] for because [Plaintiff did not] have a pen."  (Id. 31:8-12.)  Plaintiff agreed to step out of his car once Fusaro allegedly pointed a Taser at him and told him to "get the fuck out of the car."  (Pl. 56.1 ¶ 17; Pl. Dep. Tr. 32:5-7, 35:1-40:17; Nikocevic Dep. Tr. 35:18-36:24.)

As Plaintiff started to step out of his car, Nikocevic, with the assistance of several other officers, allegedly grabbed Plaintiff, slammed him against the car (causing him to hit his head), and handcuffed him.  (Id. ¶¶ 18, 20, 32-38; Pl. Dep. Tr. 40:12-17, 43:24-44:3.)  Plaintiff complained to Nikocevic that the handcuffs were extremely tight.  (Pl. 56.1 ¶¶ 20-21.)  In the

3

process of arresting him, the officers also reopened a small, scabbed-over cut on Plaintiff's ring finger, causing it to bleed.  (Id. ¶¶ 39-40.)

Plaintiff was arraigned on charges of operating a vehicle without a seatbelt in violation of New York Vehicle and Traffic Law § 1229-C(3) and obstructing governmental administration in violation of New York Penal Law § 195.05.  (Am. Compl. ¶ 19.)  Plaintiff was not charged with driving without a license, and the Kings County District Attorney's Office noted on its screening sheet that Plaintiff did, in fact, have a valid driver's license.  (Office of the District Att'y, Kings Cty., Complaint Room Screening Sheet (Dkt. 30-7).)  Plaintiff was released on his own recognizance and had two subsequent court appearances before the charges were adjourned in contemplation of dismissal.  (Pl. 56.1 ¶¶ 41-45.)

### B.    Procedural History

Plaintiff filed suit against the City and the Officer Defendants on December 11, 2015 (Compl. (Dkt. 1)), then filed an amended complaint on May 12, 2016 (Am. Compl.).  In his amended complaint, Plaintiff alleges that the Officer Defendants violated his constitutional rights to be free from false arrest and imprisonment (Am. Compl. ¶¶ 46-51), unlawful search (id. ¶¶ 52-56), and excessive force (id. ¶¶ 76-79); that they deprived him of the right to a fair trial by providing false evidence against him (id. ¶¶ 61-75); and that they failed to prevent their fellow officers from violating his constitutional rights (id. ¶¶ 57-60).[2]  Plaintiff also asserted a negligence claim against all Defendants, including the City, under New York law.  (Am. Compl. ¶¶ 80-83.)

---

[2] Although the amended complaint includes numerous allegations that the City is deliberately indifferent to arrestees' constitutional rights (e.g., id. ¶¶ 33-42), he does not assert a specific claim that his constitutional rights were violated pursuant to an official custom or policy, such that the City may be held liable under 42 U.S.C. § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Following discovery, Defendants moved for summary judgment.  (Defs. Mot.; see also Pl. Mem. in Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") (Dkt. 28); Defs. Reply in Supp. of Mot. for Summ. J. ("Defs. Reply") (Dkt. 31).)  Plaintiff withdrew his state-law negligence claim in response to Defendants' motion (Pl. Opp'n at 2), so only his § 1983 claims against the Officer Defendants remain in contention.

## II.    LEGAL STANDARD

### A.    Summary Judgment

The court may enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court draws all reasonable inferences and resolves all ambiguities in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55 (1986).  The court may enter summary judgment if the evidence, so construed, would not permit a reasonable jury to find in favor of the non-moving party.  Id. at 249-50.

### B.    Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Id. (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  While a plaintiff need not identify "a case directly on point" to show that law is "clearly established," id., the Supreme Court has frequently reiterated the "longstanding principle that 'clearly established

law' should not be defined 'at a high level of generality,'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Mullenix, 136 S. Ct. at 308 (quoting al-Kidd, 536 U.S. at 742).

"Where the right at issue in the circumstances confronting police officers was clearly established but was violated, the officer will still be entitled to qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." Outlaw v. City of Hartford, 884 F.3d 351, 366 (2d Cir. 2018). Whether an officer's conduct was objectively reasonable is a mixed question of law and fact, in which the factfinder resolves disputes over historical facts and the court makes the "ultimate legal determination of whether qualified immunity attaches on those facts." Id. at 367 (quoting Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004)).

## III.    DISCUSSION

Defendants ask the court to enter summary judgment in their favor as to each of Plaintiff's § 1983 claims. The court discusses each claim in turn.

### A.    False Arrest and Imprisonment

First, Plaintiff claims that the Officer Defendants arrested and detained him without a warrant or probable cause, in violation of his Fourth Amendment rights.

"A [S]ection 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).[3]  To prevail on such a claim, a

---

[3] False-arrest and false-imprisonment claims share the same elements under both § 1983 and New York law, see Posr v. Doherty, 944 F.2d 91, 96-97 (2d Cir. 1991); Biswas v. City of New York, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013), so the court refers to this as Plaintiff's "false-arrest" claim for the sake of simplicity.

plaintiff must prove that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . ." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant, 101 F.3d at 852). "[P]robable cause . . . exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jenkins, 478 F.3d at 84 (quoting Weyant, 101 F.3d at 852). Although the existence of probable cause will often depend on disputed facts, which should be resolved by a jury, "[t]he existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers." Jackson v. City of New York, 939 F. Supp. 2d 219, 229 (E.D.N.Y. 2013). Where, as here, "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016) (quoting Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)).

Defendants move for summary judgment on Plaintiff's false-arrest claim on the grounds that there was probable cause for his arrest because he was not carrying his driver's license when he was stopped and that, in any event, Nikocevic is entitled to qualified immunity. (Defs. Mem. at 8-13.) Plaintiff argues in response that Defendants could not have had probable cause to arrest him because they lacked a valid basis to stop him in the first place (Pl. Opp'n at 5-8) and because

they had no probable cause to arrest him once he gave them a photograph of his driver's license (id. at 8-11). For the reasons that follow, the court concludes that the Officer Defendants had probable cause to arrest Plaintiff. Even if they did not, they would be entitled to qualified immunity because they had at least arguable probable cause.

### 1.   Initial Stop

The Officer Defendants claim that they stopped Plaintiff because he was driving without a seatbelt. Plaintiff testified, however, that he was, in fact, wearing his seatbelt at the time of the stop, and argues that the Officer Defendants therefore could not have reasonably suspected him of driving without a seatbelt. (Id. at 6.) Additionally, Plaintiff observes that the testimony of Nikocevic's and Yapp's testimony is inconsistent as to whether they saw him driving without a seatbelt and what they said to each other thereafter, casting doubt on the veracity of their account. (Id. (citing Pl. 56.1 ¶¶ 49-51).) This conflicting evidence raises a genuine dispute as to whether, at the time of the stop, Nikocevic and Yapp actually observed Plaintiff driving without a seatbelt.

This dispute is, however, immaterial. As Defendants note, Plaintiff does not assert a separate § 1983 claim challenging the initial stop as unlawful. Instead, Plaintiff alleges that the Officer Defendants lacked reasonable suspicion for this initial stop in order to show that his subsequent arrest was not supported by probable cause. (Id. at 7-8.) In effect, Plaintiff argues that his arrest was "fruit of the poisonous tree," tainted by the allegedly unlawful stop. As the Second Circuit has made clear, however, the "fruit of the poisonous tree" doctrine does not apply to § 1983 claims. Jenkins, 478 F.3d at 91 n.16; Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999). Whether Plaintiff's initial stop violated the Fourth Amendment therefore has no bearing on whether his subsequent arrest violated his constitutional rights. See, e.g., Ikezi v.

8

City of New York, No. 14-CV-509 (MKB), 2017 WL 1233841, at *5 (E.D.N.Y. Mar. 31, 2017);

Matthews v. City of New York, 889 F. Supp. 2d 418, 433-34 (E.D.N.Y. 2012).

      2.    Driving Without a License

Next, Plaintiff argues that the Officer Defendants violated his constitutional rights by arresting him even after he produced a photograph of his valid driver's license. (Pl. Opp'n at 8-12.) In particular, Plaintiff argues that (1) his conduct cannot reasonably support a charge of obstructing government administration (id. at 10-11) and (2) Nikocevic lacked probable cause to arrest him because New York law does not criminalize driving while not in personal possession of a valid license, but only unlicensed driving (id. at 11-12).

The court can easily dispose of Plaintiff's first contention. To defeat a false-arrest claim, the defendant need only show that there was probable cause to arrest the plaintiff, not "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.). The relevant question is thus not whether the Officer Defendants had probable cause to arrest Plaintiff for driving without a seatbelt or obstruction of governmental administration, but whether they had probable cause to arrest him for any offense.

Plaintiff's second contention warrants more careful scrutiny. New York prohibits individuals from driving unless they are "duly licensed pursuant to" the state's Vehicle and Traffic Law, N.Y. Veh. & Traf. Law § 509(1), and specifically authorizes warrantless arrests of drivers who violate this provision, see id. § 155; People v. Chatelain, 886 N.Y.S. 2d 679, 680 (App. Div. 2009). State law also requires that a driver produce his or her license upon the demand of a law-enforcement officer or motor-vehicle inspector. See Veh. & Traf. § 507(2). Unlike some other states, however, New York does not make failure to produce a license upon a

demand an independent crime or violation. Instead, a driver's failure to produce a valid license merely provides "presumptive evidence that [the driver] is not duly licensed." Id.; see People v. Vagenas, 873 N.Y.S.2d 514 (App. Term 2008); see also People ex rel. Keegan v. Meyer, 186 N.Y.S. 434, 435 (App. Div. 1921) (earlier law).

Because, at the time of his arrest, Plaintiff undisputedly held a valid driver's license—even if he did not have it in his possession and thus was unable to produce it—he was not actually in violation of New York Vehicle and Traffic Law § 509(1). The question before the court, however, is not whether Plaintiff was actually violating the law but whether the Officer Defendants had probable cause to believe that he was violating the law; "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Plaintiff's inability to produce his driver's license created a presumption under New York law that he was in violation of § 509(1), and thus furnished the Officer Defendants with probable cause to arrest. Veh. & Traf. § 507(2). The court has identified no authority holding that a driver's production of a photograph or copy of his license rebuts this presumption and eliminates probable cause to arrest. Plaintiff relies on dicta in People v. Copeland, 355 N.E.2d 288 (N.Y. 1976), for the proposition that police may arrest a validly licensed driver who is unable to produce his license only if that driver cannot provide "any data with which a uniform traffic summons could be prepared" (Pl. Opp'n at 10-11), but Copeland actually upheld the arrest of a motorist who was driving without a license and thus does not support the proposition that police officers lack probable cause to arrest motorists who provide other identification in lieu of their actual licenses. See People v. Cortes, 382 N.Y.S. 2d 445, 447 (Sup. Ct. 1976) ("[A] police officer is empowered to arrest a person for any traffic infraction committed in the officer's presence, even though the courts have expressed a

preference for the use of an appearance ticket in such situations." (citing, inter alia, People v. Copeland, 370 N.Y.S.2d 775 (App. Term 1975), aff'd, 355 N.E.2d at 288)).  Because probable cause existed for Plaintiff's arrest, his false-arrest claim is unavailing.[4]

Accordingly, Defendants' motion for summary judgment as to Plaintiff's false-arrest claim is GRANTED.

## B.    Unlawful Search

Next, Plaintiff alleges that Defendants wrongfully searched him, in violation of his Fourth Amendment rights.  (Am. Compl. ¶¶ 52-56.)  The factual basis for this claim is sparse. Although Plaintiff alleges in his amended complaint that he was strip-searched (id. ¶¶ 53-54), the record is devoid of evidence supporting these allegations.  Instead, the record, viewed in the light most favorable to Plaintiff, indicates only that the Officer Defendants searched Plaintiff's person as he was held against the side of his car and before he was moved to the backseat of a patrol car. (Pl. Dep. Tr. 43:24-44:2; 44:24-45:21.)  As with his false-arrest claim, Plaintiff argues that the Officer Defendants lacked either a lawful basis to stop him in the first place or probable cause to arrest and search him.  (Pl. Opp'n at 5-11.)

These arguments are unpersuasive for substantially the reasons stated above with respect to Plaintiff's false-arrest claim.  First, to the extent Plaintiff argues that his search was unlawful

---

[4]  Even if probable cause did not exist for the arrest, this claim would fail because the Officer Defendants would be entitled to qualified immunity.  Where a warrantless arrest is made without probable cause, the arresting officers are entitled to qualified immunity if "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law."  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (quoting Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001).  At worst, New York law is ambiguous as to whether a police officer may arrest a driver who produces a photograph of his license, rather than the license itself.  In light of this ambiguity, the Officer Defendants could have reasonably believed that they had probable cause to arrest him, and thus would be entitled to qualified immunity as to Plaintiff's false-arrest claim.

because it followed an allegedly unlawful traffic stop, he relies on a "fruit of the poisonous tree" theory that is not cognizable under § 1983. See, e.g., Jenkins, 478 F.3d at 91 n.16.

Second, to the extent Plaintiff argues that his search was unlawful because the Officer Defendants lacked probable cause to search him, this argument is also unavailing because the search was incident to a lawful arrest. The Fourth Amendment does not prohibit warrantless searches that are incident to lawful arrests. Arizona v. Gant, 556 U.S. 332, 338 (2009). This exception, which "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations," enables arresting officers to search "'the arrestee's person and the area within his immediate control'" as part of a lawful arrest. Id. at 339 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)); see also United States v. Robinson, 414 U.S. 218, 235 (1973). Because, as discussed above, the Officer Defendants had probable cause to arrest Plaintiff, his arrest was lawful, and because there is nothing in the record to suggest that the Officer Defendants searched anything other than Plaintiff's person, his unlawful-search claim fails.[5]

Accordingly, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's unlawful-search claim.

---

[5] Even if the Officer Defendants had lacked actual probable cause to arrest, they would nevertheless be entitled to qualified immunity because there was at least arguable probable cause for the arrest. See Butler v. Brito, No. 15-CV-9718 (CS), 2017 WL 2116687, at *5 n.4 (S.D.N.Y. May 15, 2017) (citing Schaffer v. Beringer, 842 F.3d 585, 593 (8th Cir. 2016); see also Anderson v. City of New York, No. 15-CV-6246 (AJN), 2017 WL 4712790, at *6 (S.D.N.Y. Sept. 25, 2017) ("Given the above finding that [the arresting officer] had arguable probable cause for the arrest, and absent any reason to believe the search strayed outside the bounds of what is acceptable incident to a lawful arrest, Plaintiff's unlawful search claim must fall with plaintiff's false arrest claim.")

### C.    Excessive Force

Next, Plaintiff alleges that the Officer Defendants, and especially Nikocevic, used excessive force to arrest him, including by slamming him against his car and by handcuffing him too tightly.  (Am. Compl. ¶¶ 14-15, 76-79; Pl. 56.1 ¶¶ 28-29, 32, 39-40.)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).  In analyzing excessive-force claims brought under § 1983 by free individuals (rather than convicted prisoners), courts consider whether the force used was objectively reasonable, as "judged from the perspective of a reasonable officer on the scene."  Graham v. Connor, 490 U.S. 386, 388, 396-97 (1989).  This "inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake," considering "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Tracy, 623 F.3d at 96.  While "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment," Graham, 490 U.S. at 397 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), "the use of entirely gratuitous force is unreasonable and therefore excessive," Tracy, 623 F.3d at 99 n.5.

Defendants contend first that Plaintiff cannot base an excessive force claim on the alleged slamming, because he has not corroborated these allegations with independent evidence, and second that he cannot base such a claim on the alleged excessively tight handcuffing, as any

13

injuries from his handcuffing were <u>de minimis</u>.  The court rejects the former contention and accepts the latter, for the reasons that follow.

      1.    <u>Slamming</u>

Plaintiff testified that, as he was stepping out of his car, Nikocevic, along with two or three other officers, "grabbed him and slammed him against his car."  (Pl. 56.1 ¶ 18 (citing Pl. Dep. Tr. 40:16).)  According to Plaintiff, these Officer Defendants slammed him against his car's "driver's back side towards the rear wheel," as a result of which his "head was thrown on top of the hood" and Plaintiff "banged [his] hand against the car," causing some old cuts to reopen and bruising his hand.  (Pl. Dep. Tr. 41:15-24; <u>see also id.</u> 42:11-44:11, 90:23-91:11.)

A reasonable jury could conclude that this force was objectively unreasonable in light of the circumstances.  Viewing the evidence in the light most favorable to Plaintiff, the court observes that the offenses leading to Plaintiff's arrest were exceedingly trivial; that the arrest took place at midday; that there is no evidence that Plaintiff posed a threat to the Officer Defendants; that he does not appear to have actively resisted arrest or attempted to flee (although he may have refused to exit his car for a brief period of time); and that, at the time he was allegedly slammed to his car, he was attempting to comply with Nikocevic's orders.  Under these circumstances, a reasonable jury could conclude that the force used against Plaintiff was objectively unreasonable.  <u>See, e.g.</u>, <u>Cuellar v. Love</u>, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *7 (S.D.N.Y. Apr. 11, 2014) (denying summary judgment on excessive-force claim premised on allegations that the arresting officer "purported leaned Plaintiff against the police car and then slammed him to the ground," notwithstanding that the plaintiff suffered no injuries); <u>Davenport v. County of Suffolk</u>, No. 99-CV-3088 (JFB), 2007 WL 608125, at *10-11 (E.D.N.Y. Feb. 23, 2007) (denying summary judgment in a case in which the plaintiff alleged that the

arresting officer gratuitously "bang[ed the plaintiff's] head on the police car during the arrest");

Gonzales v. City of New York, No. 98-CV-3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7,

2000) (denying summary judgment in a case in which the "plaintiff, who was undisputedly not

resisting arrest, was dragged to the front of the police car, slammed against the hood of the

vehicle and forcibly handcuffed").[6]

Defendants argue that summary judgment is proper because Plaintiff has not corroborated

his testimony with medical records or other witness testimony. (Defs. Mem. at 17.) Defendants

argue that Plaintiff therefore offers only "allegations" of excessive force, not evidence sufficient

to create a genuine issue of material fact. (Defs. Reply at 1-2, 6-8 (citing Celotex Corp. v.

Catrett, 477 U.S. 317 (1986)).) This argument misunderstands the difference between evidence

and allegations, as well as the purpose of summary judgment. As a general matter, courts may

not disregard a party's testimony on summary judgment simply because the evidence favors that

party that offered it. See Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 (2d Cir. 1998) (holding

that, on summary judgment, courts cannot simply disregard a nonmovant's "self-serving"

allegations of fact); see also Wilson v. McRae's, Inc., 413 F.3d 692, 694 (7th Cir. 2005)

(Easterbrook, J.) ("Most affidavits are self-serving, as is most testimony, and this does not permit

a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute

requires trial."). Moreover, in this specific context, courts in this circuit have generally "not

---

[6] Defendants have not argued that Nikocevic or the other Officer Defendants are entitled to qualified immunity as to this claim. (Cf. Defs. Mem. at 10-13.) For purposes of this claim, Nikocevic would be entitled to qualified immunity if "a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995) (quoting Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)). Genuine factual issues remain, however, as to whether Plaintiff was cooperating and how much force Nikocevic actually used against Plaintiff. Accordingly, the court will not sua sponte grant Nikocevic summary judgment on qualified-immunity grounds. See Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

required that injuries caused by the alleged excessive force be corroborated by medical records." Ninortey v. Shova, No. 05-CV-542 (SHS), 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008); see also Brown v. Dubois, 9:15-CV-1515 (LEK) (CFH), 2017 WL 2983305, at *8 (N.D.N.Y. June 16, 2017) ("Despite the lack of medical evidence corroborating plaintiff's allegations, such determinations of material facts are better left for a jury to decide."), R. & R. adopted, 2017 WL 2983011 (N.D.N.Y. July 12, 2017).

Plaintiff testified that he was injured as a result of Nikocevic's allegedly excessive use of force, and he described the injuries he claims to have received. That testimony alone is sufficient to create a genuine issue of fact as to whether Nikocevic injured him, without the need to present additional corroborating evidence. Although the court may properly grant summary judgment in a case in which the "plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," such that no reasonable jury could find in his favor, this "rare circumstance" is not present here. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

The court concludes, however, that Plaintiff's excessive-force claim based on the alleged slamming survives summary judgment only to the extent it is asserted against Nikocevic. Although Plaintiff avers in his Rule 56.1 statement that "two or three other officers" slammed him against his car (Pl. 56.1 ¶ 32), his initial actual testimony was at best ambiguous as to who slammed him against the car (Pl. Dep. Tr. 40:12-17), and he soon admitted that it was Nikocevic who actually slammed him against the car (id. 41:1-7, 98:2-6). In the absence of any clear evidence that the other Officer Defendants slammed Plaintiff against his car, the court concludes that no reasonable jury could find in favor of Plaintiff's favor against these defendants.

Defendants' motion for summary judgment on Plaintiff's excessive-force claim based on the alleged slamming is therefore DENIED, to the extent it is asserted against Nikocevic, and GRANTED, to the extent it is asserted against the other Officer Defendants.

 2.  Handcuffing

The court agrees with Defendantss, however, that Plaintiff has failed to adduce sufficient evidence that Nikocevic used excessive force when handcuffing him.

"Courts in the Second Circuit apply a specific standard to claims of excessive force based on a law enforcement officer's use of handcuffs." Christian v. Kelly, No. 14-CV-7416 (PKC), 2016 WL 3162056, at *2 (E.D.N.Y. June 3, 2016). "When considering whether handcuffing constitutes excessive force, a court is to consider evidence that 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Id. (internal quotation marks and citations omitted); see also Jackson v. City of New York, 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013). "There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort. While overly tight handcuffing can constitute excessive force, the lack of a continuing injury beyond temporary discomfort is fatal to an excessive force claim." Harris v. Nassau County, No. 13-CV-4728 (NGG), 2016 WL 3023265, at *10 (E.D.N.Y. May 24, 2016) (internal quotation marks and citations omitted and alterations adopted); see also Higginbotham v. City of New York, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) ("[T]here is a consensus in the case law that tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising."); Sachs v. Cantwell, No. 10-CV-1663 (JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012) (collecting cases).

17

Viewing the evidence in the light most favorable to the Plaintiff, Plaintiff appears to have been cuffed very tightly (particularly in light of the trivial nature of his offenses) and to have requested, to no avail, that his cuffs be loosened. (Pl. 56.1 ¶¶ 20-21, 25; Pl. Dep. Tr. 45:24-46:1, 48:7-12.) It does not appear, however, that Plaintiff suffered "continuing injury beyond temporary discomfort" from his cuffing. According to Plaintiff, the excessively tight handcuffs caused his wrists to swell, resulting in severe pain for approximately one week. (Pl. 56.1 ¶ 28.) He took Aleve to cope with this pain and did not seek medical treatment. (Pl. Dep. Tr. 79:16-17.) This absence of lasting injury is fatal to his excessive-force claim, to the extent it is based on allegations of overly tight handcuffing.

Defendants' motion for summary judgment on Plaintiff's excessive-force claim is therefore GRANTED, to the extent Plaintiff alleges that he was handcuffed too tightly.

*       *       *

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment on Plaintiff's excessive-force claim as to Fusaro, Czech, Leon, and Yapp, and as to Nikocevic with respect to Plaintiff's allegations of excessively tight handcuffing. The court DENIES Defendants' motion to the extent Plaintiff alleges that Nikocevic unreasonably slammed him against his car during the arrest.

### D.    Fair Trial

Plaintiff argues that Nikocevic also violated his right to a fair trial by misrepresenting to the Kings County District Attorney's Office that Plaintiff was operating his car without wearing a seatbelt, as well as by failing to disclose that Plaintiff produced a photograph of his driver's license. (Pl. Opp'n at 18.) This claim, too, withstands summary judgment.

18

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Garnett v. Undercover Officer C0039, 838 F.3d 265, 275 (2d Cir. 2016) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). To establish that false statements by police violated his right to a fair trial, the plaintiff need not have actually stood trial, but he must show that he "suffered a 'deprivation of liberty that is not too remote a consequence of the act of creating the false information.'" Collins v. City of New York, No. 14-CV-8815 (AJN), 2018 WL 1596190, at *13 (S.D.N.Y. Mar. 29, 2018) (alteration adopted); see also Powers v. Coe, 728 F.2d 97, 105-06 (2d Cir. 1984).[7] The viability of a § 1983 claim based on false statements or fabrication of evidence does not depend on the absence of probable cause for the plaintiff's arrest. Ricciuti, 124 F.3d at 129-30.

Defendants move to dismiss Plaintiff's fair-trial claim on the grounds that there is no evidence that Nikocevic made any false statements or that Plaintiff suffered a "deprivation of

---

[7] Some courts in this district have indicated that a fair-trial claim "necessarily involves a conviction and resulting sentence." E.g., Alford v. City of New York, No. 11-CV-622 (ERK), 2012 WL 3764429, at *4 (E.D.N.Y. Aug. 29, 2012). It is not clear that this rule accords with Ricciuti, in which the Second Circuit concluded that summary judgment was inappropriate on a fair-trial claim where the underlying criminal charges were dismissed prior to trial, as a fair-trial claim accrues "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." 124 F.3d at 130. Courts in this circuit have, by an overwhelming majority, adopted the view that, to assert a § 1983 fair-trial claim, a plaintiff need not have actually stood trial and been convicted. See Apostol v. City of New York, No. 11-CV-3851 (RRM), 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014) (collecting cases); see also Douglas v. City of New York, 595 F. Supp. 2d 333, 346-47 (S.D.N.Y. 2009); Nnodimele v. Derienzo, No. 13-CV-3461 (ARR), 2016 WL 337751, at *14 (E.D.N.Y. Jan. 27, 2016) ("Defendants' offhand suggestion that plaintiff cannot recover for pre-trial deprivations of liberty occasioned by the detectives' fabrications is wholly inconsistent with Ricciuti and the multitude of cases involving fair trial claims asserted without reference to a criminal conviction."); Thomas v. City of New York, No. 11-CV-2219 (LAP), 2013 WL 1325186, at *10 (S.D.N.Y. Apr. 2, 2013) ("Neither an actual trial being conducted nor a conviction is required to sustain a fair trial claim under § 1983."); Keller v. Sobolewski, No. 10-CV-5198 (FB), 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12, 2012) ("Defendants are likewise in error when they assert that a deprivation of fair trial claim requires either a conviction or trial."); Pagan v. Willoughby, No. 10-CV-155 (JBA), 2012 WL 3027903, at *8 (D. Conn. July 24, 2012).

19

liberty" as a result of such fabrication. (Defs. Mem. at 18-19.) Neither contention is persuasive, at least for purposes of summary judgment.

The evidence before the court suffices to create a genuine issue of material fact as to whether Nikocevic falsely represented that Plaintiff was not wearing a seatbelt at the time he was pulled over. At this point, the evidence is entirely "he said, they said": Plaintiff claims he was wearing a seatbelt, whereas Nikocevic and Yapp say that he was not. (Pl. 56.1 ¶¶ 2-4, 7, 48-53.) Additionally, the arresting officers' deposition testimony regarding why Plaintiff was pulled over is somewhat contradictory. Nikocevic testified that, after he saw Plaintiff driving without a seatbelt, he turned on his emergency lights, Yapp asked him why he had turned on the lights, and Nikocevic told Yapp that the "[Plaintiff] was driving without a seatbelt." (Nikocevic Dep. Tr. 18:9-19.) Yapp, on the other hand, testified that he and Nikocevic both observed Plaintiff driving without a seatbelt and that they "both kind of said no seatbelt, that's about it." (Yapp Dep. Tr. (Dkt. 30-9) 12:23-14:6.) With the benefit of live testimony, a reasonable jury might determine that the police officers' report that they saw Plaintiff driving without a seatbelt was false, and thus that Plaintiff should prevail on this claim.[8] Summary judgment is inappropriate in light of this conflicting evidence.

Nor is summary judgment proper on the grounds that Plaintiff suffered no deprivation of liberty as a result of Nikocevic's allegedly false statement that Plaintiff was driving without a seatbelt. "Spending a number of hours in jail has been found to constitute a sufficient

---

[8] There is no dispute that Officer Nikocevic told prosecutors that he and Yapp stopped Plaintiff for driving without a seatbelt. As Nikocevic testified, after arresting Plaintiff, he faxed his arrest report to the district attorney's office and spoke with someone from the office by telephone. (Nikocevic Dep. Tr. 39:19-44:16.) The Arrest Report (Dkt. 30-10) states that Plaintiff was stopped for driving without a seatbelt. The Complaint Room Screening Sheet prepared by the district attorney's office also states that Plaintiff "was not wearing [a] seatbelt and refused to give [Nikocevic his] name and refused to get out of the car," and noted that Nikocevic had been interviewed about the charges. (Complaint Room Screening Sheet at 1, 2.)

deprivation of liberty [supporting a § 1983 fair-trial claim], as has the obligation to attend numerous follow-up court appearances." Collins, 2018 WL 1596190, at *13; see also Dowling v. City of New York, No. 11-CV-4954 (NGG), 2013 WL 5502867, at *6-7 (E.D.N.Y. Sept. 30, 2013) (finding a deprivation of liberty based on 24 hours' detention prior to adjournment in contemplation of dismissal). Viewing the facts in the light most favorable to the Plaintiff, it appears that Plaintiff was arrested shortly after noon and proceeded to spend the next 21 to 25 hours in jail, including about eight hours at the precinct and another 12 to 16 hours at central booking. (Pl. Dep. Tr. 50:20-51:9, 52:20-25, 59:10, 63:7, 64:16, 64:25-66:20; see also Pl. 56.1 ¶ 41.) Most of this time appears to have elapsed after Nikocevic filed his report and a criminal complaint was drafted. (See Arrest Report (Dkt. 30-10) (noting that the incident was reported at 1:30 p.m.); Crim. Ct. Compl. (Dkt. 30-11) (time-stamped at 7:54 p.m.).) Nor was the deprivation of Plaintiff's liberty limited to this initial detention, as he had two subsequent court appearances (one of which he attended personally) and appears to have performed one day of community service prior to accepting an adjournment in contemplation of dismissal. (Pl. 56.1 ¶¶ 42-44; Pl. Dep. Tr. 66:22-71:4.) Plaintiff's initial detention, combined with his subsequent court appearances and community service, clearly constitutes a deprivation of liberty supporting a fair-trial claim.

Accordingly, Defendants' motion to dismiss the fair-trial claim against Nikocevic is DENIED. Because Plaintiff has not adduced any evidence from which a jury might conclude that the other Officer Defendants provided false evidence to the district attorney's office, Defendants' motion is GRANTED with respect to Fusaro, Czech, Leon, and Yapp.

E.      **Failure to Intervene**

Finally, Plaintiff claims that all the Officer Defendants should be liable for preventing

their fellow officers (particularly Nikocevic) from violating Plaintiff's constitutional rights.

(Am. Compl. ¶¶ 57-60.) Defendants move for summary judgment on the grounds that Plaintiff

has failed to show that his constitutional rights were violated, and, alternatively, that he has not

shown that "any of the Defendants had a realistic opportunity to intervene given that his

interactions were limited to Officer Nikocevic." (Defs. Mem. at 19.)

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to

intercede is liable for the preventable harm caused by the actions of the other officers where that

officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen

has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a

law enforcement official," provided that the officer had a "realistic opportunity to intervene to

prevent the harm from occurring." Id. (citations omitted).

Plaintiff's failure-to-intervene claim cannot withstand summary judgment, to the extent

he alleges that the Officer Defendants' failed to intervene to prevent his allegedly unlawful

arrest, search, or allegedly overly tight handcuffing, because he has not established that his

arrest, search, or handcuffing were unlawful, and officers cannot be liable for failure to intervene

where there is no primary constitutional violation. Forney v. Forney, 96 F. Supp. 3d 7, 13

(E.D.N.Y. 2015).[9] Nor can Officer Nikocevic be held liable on Plaintiff's excessive-force and

_____

[9] Even if Plaintiff's arrest did violate the Fourth Amendment because Nikocevic lacked actual probable cause, he had at least arguable probable cause to arrest Plaintiff, so it cannot be said that it was objectively unreasonable for the remaining Officer Defendants to believe that his conduct in arresting Plaintiff did not violate Plaintiff's rights. See Ricciuti, 124 F.3d at 129; Williams v. City of New York, No. 14-CV-7158 (JPO), 2016 WL 3194369, at *7

fair-trial claims on a failure-to-intervene theory, because "where the officer is a direct participant in the alleged[ constitutional violation], the failure to intervene theory of liability is inapplicable." Cuellar, 2014 WL 1486458, at *8.  That leaves only the question of whether the remaining Officer Defendants can be liable for failing to intervene to prevent Nikocevic from allegedly using excessive force against Plaintiff and depriving him of the right to a fair trial.

The court agrees that summary judgment is appropriate with respect to these remaining theories because Plaintiff has not produced evidence from which a reasonable jury could conclude that these Officer Defendants had a reasonable opportunity to prevent Nikocevic from allegedly violating Plaintiff's rights.  With respect to Plaintiff's excessive-force claim, although Plaintiff testified that "two or three other officers that w[ere] around the car" helped Nikocevic grab him (Pl. Dep. Tr. 40:15-16), he provided no further details of which officers were responsible, where they were in relation to Nikocevic, or, perhaps most importantly, how quickly Nikocevic slammed him against the car.  In light of these circumstances, and in the absence of evidence that could allow a jury to infer that intervention was reasonably possible (as might be true of repeated slamming or a prolonged attack), Plaintiff has not shown that the other Officer Defendants had a reasonable opportunity to prevent the alleged use of excessive force.  Likewise, Plaintiff has identified no evidence suggesting that the other Officer Defendants had a reasonable opportunity to prevent Nikocevic from allegedly submitting false information to the district attorney's office.

The court therefore GRANTS Defendants' motion to dismiss Plaintiff's failure-to-intervene claim.

---

(S.D.N.Y. June 7, 2016) (where arresting officer has "at least arguable probable cause to arrest," his fellow officers are entitled to summary judgment on a claim alleging that they failed to intervene in an unlawful arrest).  At worst, the remaining Officer Defendants are entitled to qualified immunity on this claim.

## IV.    CONCLUSION

Defendants' motion for summary judgment (Dkt. 24) is GRANTED IN PART and DENIED IN PART.  The court grants the motion with respect to Plaintiff's false-arrest, unlawful-search, failure-to-intervene, and negligence claims against all Defendants, as well as with respect to his excessive-force and fair-trial claims against the City of New York, Sergeant Fusaro, and Officers Czech, Leon, and Yapp.  The court denies the motion with respect to Plaintiff's excessive-force claim against Officer Nikocevic, to the extent Plaintiff alleges that Nikocevic unreasonably slammed him against his car, and with respect to the fair-trial claim against Nikocevic.

SO ORDERED.

/s Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 3 1, 2018

NICHOLAS G. GARAUFIS
United States District Judge

24